JAMES A. STEWART, Appellant, *v.* CHARLES GATES, Appellee.

1. VENDOR AND VENDEE: RIGHT TO RESCIND.—Where, by the terms of the title-bond, the vendor binds himself to make title to the land, upon payment of the purchase-money on a day specified, and that he will give the vendee another year, in which to make payment, if he should be unable to do so on the day named,— if the vendor, after the expiration of the additional year, and the failure of the vendee then to pay, without any new agreement between the parties, voluntarily indulges the vendee for an indefinite period, he cannot then elect to consider the contract at an end on account of the previous default of the vendee; there must first be a demand made for the purchase-money by the vendor, and a refusal to pay by the vendee.

2. TITLE-BOND: EFFECT OF INDULGENCE ON PART OF VENDOR.—The stipulation in a title-bond, that if the vendee should be unable to pay the purchase-money at the maturity of the debt, he should have another year in which to discharge

the debt, upon paying interest, is an indulgence for the benefit of the vendee; and his failure to pay the purchase-money at maturity, will not operate as a forfeiture of his rights, under a clause in the contract, which declares the obligation to convey to be void unless the purchase-money is paid when it falls due.

APPEAL from the District Chancery Court at Fulton. Hon. Henry Dickinson, vice chancellor.

The opinion of the court contains a full statement of the facts.

*C. B. Baldwin,* for appellant.

The question presented is, was Stewart bound to comply with his portion of the agreement, after Turman for three years and a half had failed to perform his part thereof? This would seem easy of solution, from the terms of the contract made by the parties: That if Turman paid Stewart one hundred and twenty-five dollars on the 1st of March, 1849, then Stewart should convey; if, however, he did not pay on that day, Stewart's obligation should be void. What right has any court to change the terms of that contract? This court has decided that the contract thus made by the parties, shall be adhered to; that if the purchaser fails to pay, the vendor may consider the agreement at an end, and lawfully sell to another. *Moore* v. *Holloway,* 4 S. & M. 594: and that if the vendor is unable to make a good title when the purchase-money is due and tendered, the vendee may cancel. 9 S. & M. 596. The vice chancellor, however, seems to have considered something else necessary:—that Stewart should have presented Turman's note for payment, and have accompanied that presentation with a threat, that if not paid, he would cancel. The books, however, all say, that it is the duty of the payee to find his creditor, and tender payment. If Stewart at any time had the right to consider his contract at an end, would Turman's failure to tender or pay, deprive him of that right? Or, would Stewart's kindness to Turman, in permitting him to remain on his land rent-free, debar him of any right he possessed the moment Turman forfeited his contract? It is conceived that the court will still regard its solemn adjudication of the principle involved in this cause, as entitled to some respect, notwithstanding the fact that

the vice chancellor has clearly overruled the case of *Holloway* v. *Moore*, 4 S. & M. 594.

The case of *Lindsey* v. *Henderson*, 27 Miss. R. 503, does not apply, as no payment was made.

*W. F. Dowd*, for appellee.

The defendant, Stewart, seeks to avoid the decree for specific performance of this contract, because the purchase-money was not paid at maturity. *This is not sufficient*, when the proof shows that the vendor *acquiesced*, and voluntarily *agreed* to the postponement of payment of the purchase-money.

Default in payment to the day appointed, is *not a bar of itself*, but is only one circumstance to prove abandonment of the contract, and may be rebutted. *Falls* v. *Carpenter*, 1 Dev. & Bat. 356.

In a case where the vendee contracted for the purchase of land and took possession, as in the case under consideration, but neglected to pay the purchase-money for a long time after it became due, during all of which time the vendor held the note for the purchase-money, and *did not offer to surrender it*, but recognized the contract as still subsisting, from the fact that the vendor allowed the contract to subsist, after *default by the vendee in the payment of the purchase-money*, the vendor could not abandon the contract without previous and formal notice to the purchaser to come forward and fulfil it, or he would abandon it, &c. And on such a state of facts, it was held that the vendee could claim a specific performance. *Falls* v. *Carpenter*, 1 Dev. & Bat. 237.

In *Holloway* v. *Moore*, 4 S. & M. 594, the Supreme Court say: "If the vendee fail to pay at the time stipulated, the vendor has *a right to consider the contract at an end. But suppose he does not so consider*, and acquiesces in the delinquency of his vendee?" This case goes further than any reported case, and even this does not apply to the case under consideration. In that case the vendee not only abandoned the contract, but the title-bond fell into the hands of Earp, who obtained a title-deed from the vendors *after the death* of the vendee. The vendors did elect in that case, to consider the contract at an end, and sold to another. This deci-

Stewart *v.* Gates.

sion is founded on the case of *Hatch* v. *Cobb*, 4 Johns. Ch. R. 559. In that case, the vendor, after long delay, *twice demanded payment of the vendee*, who refused and failed to pay. In the case on trial, the vendor *voluntarily indulged and waited* on the vendee, until he had sold to Gates. The first demand made, was *for the bond* and for rescission, when the vendee immediately offered to pay the money, which the vendor refused to receive!

In the case of *Kempshall* v. *Stone*, 5 Johns. Ch. R. 193, (referred to in *Holloway* v. *Moore*,) the parties *agreed to abandon the contract*, and the vendee repeatedly applied to the vendor to have the money already paid, refunded. The vendor then sold to another.

In the case of *Benedict* v. *Lynch*, also cited and relied on in *Holloway* v. *Moore*, the vendee not only failed and refused to pay, after repeated demands, but the contract was verbally abandoned. But in that case the court say, if the circumstances of the case, and the conduct of the opposite party, *afford grounds for a just inference* that he had *acquiesced and consented* to the delay and default of payment, a specific performance will be decreed; that *acquiescence* in the delay may be *inferred* from the conduct of the party or vendor, p. 379, 380. See on this subject, *Seton* v. *Slade*, 7 Vesey, 265; and *Paine* v. *Miller*, 6 Ib. 349.

In the case under consideration, the bill charges, "that Stewart, the vendor, never demanded or pressed the collection of the purchase-money of the land, but indulged the vendee voluntarily until after the sale to the complainant, who is an innocent purchaser, &c., before any intimation was given by Stewart of intention to abandon the contract. That all this while Turman was in possession, making valuable improvements," &c., &c.

So far from denying this important allegation in the bill, the defendant admits, "that Turman was poor and involved, and Stewart did not sue him for the note, *but permitted* it to remain unpaid," &c.

In conclusion, we have only to say, that in all cases of this character, when a specific performance has been refused, it was upon the ground, first, that the parties mutually agreed to rescind and abandon, or second, the acts and declarations of one party show that he has abandoned and rescinded, or third, when one party has per-

formed or offered to perform his part of the contract, and upon the refusal of the other, gave him notice that the contract was at an end. *Johnson* v. *Jackson,* 27 Miss. R. 498, 499.

FISHER, J., delivered the opinion of the court.

This is an appeal from a decree of the Vice Chancery Court, holden at Fulton.

The facts are briefly these. The appellant Stewart, in the month of January, 1848, sold to one Turman, a tract of land, situate in Chickasaw county, for the sum of $125, payable on the first of March following, and gave his bond, with condition to make Turman a title, on the payment of the purchase-money. As a part of the contract, it was understood that if Turman was unable to make payment at the time stated, he was to have one year longer, on paying interest, in which to pay the purchase-money.

It further appears, that the vendor, with a view of favoring the purchaser, on account of his indigent circumstances, took no steps to coerce payment, or to put an end to the contract, until some time in the year 1852. The inference is very clear from all the circumstances, that this indulgence, indefinitely granted to the purchaser, was intended to operate in his favor, and not to his pre-judice, by affording the vendor an opportunity of putting an end to the contract, without first giving the vendee an opportunity upon a demand, of making payment. The title-bond in the mean time appears to have been regularly assigned to the complainant, Gates, who tendered to the vendor the amount of money due upon Turman's note, and demanded a title; the vendor, on his part, refusing to receive either the money or to make the title, insisting upon his right to consider the contract at an end, in consequence of the failure to pay the money at the time stipulated. It also appears, that soon after the assignment of the title-bond, the vendor tendered to Turman his note, and demanded a return of the bond, when Turman tendered payment of the note, and de-manded a title to the land, for the benefit of the assignee.

Upon this state of facts, the vice chancellor decreed a specific performance of the contract; and we think rightly so. It is manifest, that the very object of extending indulgence to Turman,

in making payment, was to enable him to reap the full benefit of his contract; and not to work a forfeiture of the contract for the benefit of the vendor at a future day, after improvements made by the purchaser.

After indulgence granted for an indefinite time, the vendee could only be placed in default, by a demand of payment on the part of the vendor. When such demand was made, or what may be regarded as equivalent to it, payment was immediately tendered, and this we must regard, under the circumstances, as a sufficient offer to perform the contract.

Decree affirmed.